Good morning, Your Honors. May it please the Court, my name is Emmanuel Akudinobi, and I am counsel for the Plaintiff Appellant, Mr. Jordan. Your Honors, there are three issues that are implicated in the appeal today. And these three issues have a common theme that runs through all of them. And that common theme is, if it ain't broke, why fix it? If it ain't broke, why fix it? It's a common saying over my years in this country. If something ain't broke, why fix it? Why tweak it? Well, the first issue that is raised on this appeal is whether the district court misstated the law and, as such, misled the jury when they issued jury instruction number 17, which is founded on Section 4311 of United States, excuse me, on Section 4311 of 38 U.S.C. I'm a little nervous. The first issue stated on appeal here is whether or not the district court misstated the law when it imported the affirmative defense of 38 U.S.C. Section 4311, which addresses discrimination under USERRA, and applied it to a reinstatement claim under 38 U.S.C. Section 4312. Now, going back to that particular issue, and I address the other issues to react in, going to the issue of the misstatement of the law is very important for us to look at the essence of USERRA. USERRA is a statute that was enacted in 1994 that dates back to the original statute enacted in 1940 called the Selective Service Training Act. The essence of USERRA is to protect the rights of our men and women in uniform. In Section 4312 of USERRA, the United States Congress enacted a series of affirmative defenses that is applicable to that section. And those affirmative defenses are found in Section 4312D of the law. And those affirmative defenses are three. Unreasonableness, impossibility, and undue hardship. Those three affirmative defenses, according to the Congress, are the only affirmative defenses that can be brought in to limit any damages or liability in a reinstatement claim. Is there any definition of unreasonableness? What do they mean by unreasonable? Your Honor, what they mean by unreasonableness is if re-employing a service person will force the company to create a new position, then it would be unreasonable. And I'll give you an example. If, for instance, somebody went to service and came back and his position has been cut off, maybe because of a layoff, a uniform layoff that applies to everybody in that department, it would be unreasonable to create a unique position for that person alone. That is unreasonable. And then the impossibility defense comes in a situation where, for instance, by the time the person comes back, the company is bankrupt. Then it would be impossible to re-employ the person. California is an at-will state? That is true, Your Honor. Does the act implicate that at all? The act, the way it is designed, says that it is designed to simplify, clarify, and strengthen the rights of a returning service person. Any other rights yield to that particular right by virtue of the express intent of the legislation as set forth in Section 4302 of the Code. This is a hypothetical question. If Mr. Jordan had returned from his reserve duty, been given his old job back, worked for a month, and then was discharged for good, sufficient, non-discriminatory cause, would he have a right of action? He would have a right of action only if he can prove that his termination was as a result of discrimination, his service in the armed forces. My question assumed that the discharge was non-discriminatory. If it is non-discriminatory, he may not have a right of action. How is this case different? This case is different in the sense that the only issue that was tried to the court in this case is Mr. Jordan's damages, based on a finding by the district court that Air Products failed to reinstate Mr. Jordan when he came back from service. The section of the Code that governs Mr. Jordan's lawsuit as tried clearly states that a returning service person must be reinstated to his position. He has an unqualified right to his job. So far he met the express factors that are stated in the statute. Prior to leaving, he gave the notice that he was going to be going. He told them when he was going to come back, and then he came back within that time. The law says that if somebody meets those express requirements, then you must give him his job back. Mr. Jordan met all those requirements. Unfortunately, he was not given his job back. The district court already made a finding that he's entitled by law to be reinstated. But what happened here was he was never reinstated. Instead, they said, we are firing you. By not reinstating him, they've already violated his right. Is it your argument that the district court's jury instruction had the effect of transferring a defense from another section of the statute, which in essence did away with his right to be reinstated? That is true, Your Honor. That's sort of the essence of your argument, isn't it? That is true, Your Honor. The law as instructed under the jury instruction number 17, as given by the district court, imported an affirmative defense that pertains only to the discrimination portion of the statute. And what was the objection you made to the district judge? My objection, Your Honor, to the district court was that that particular affirmative defense is not applicable because, as tried in the court, we only try Mr. Jordan's damages for failure to reinstate. And there is already a clear set of laws that date back to 1940, the original enactment of the Selective Services Training Act. And you made that objection, and did he rule on the thing? He ruled on the objection. He said that he understands that Mr. Jordan has a right to reinstatement, and that my objection with regards to the measure of damages is well taken, which is mitigation of damages defense. And that is jury instruction number 16. However, the district court went further to say that since the defendants have requested that he issue another jury instruction, which is jury instruction number 17, whereby they are seeking to use the affirmative defense of the discrimination section, which is a motivating factor defense to limit damages, that he thinks that may be appropriate. However, the court itself pointed out that there is no precedent to this decision. And did you object to that point? I objected, Your Honor. And what did you say? I told the district court that I insist, if the court may, that the only applicable defense here is the mitigation of damages defense, because the company, Air Products, waived its affirmative defenses of impossibility, undue hardship, and unreasonableness. And even if they pleaded, they could not have met their burden on that. So in light of that, the only thing that we can do is follow the case law that has decided what is going to be the measure of damages in a reinstatement claim. And this case law is clearly set out in the legislative history of the statutes. I think that's well covered in your brief. And I think you focused this on what appears to be the tipping point of this case. Why don't we hear from Air Products at this time, and then you can respond. You'll have plenty of time to do it. You have about nine minutes left on the clock. I'll do that. Thank you, Your Honor. Thank you for your argument, counsel. Mr. Wolfram. Good morning, Your Honors. Michael Elwell from 4 Defendant Pele, Air Products and Chemicals. Let me start by saying I believe Judge Hawkins has hit the nail on the head with his hypothetical as to whether there is any difference between this case and the hypothetical that was posed. There is none. There is none at all. Can I just ask a sort of side question here? What business is your client in? Industrial gases. They produce and deliver industrial gases for uses such as in hospitals, computer chip making, and a whole wide variety. Does it do business with the government? Your Honor, I'm sure it – well, I believe it probably does, yes. Just one. Go ahead. There is no difference between the hypothetical you posed and this case. And this is really a case that's founded on a bedrock principle of remedies and particularly employment remedies. An injured plaintiff who has lost his job, whether it's by termination or failure to reinstate, is entitled to be made whole. Here's what I understand your opponent's argument to be, and I'd like to see if you can address it. He is saying that this jury instruction, which he objected to, had the effect of taking a defense from another section, which turned what should have been simply a damage computation effort by the trier of fact, and in effect made his rights under this act meaningless. What's your response? First of all, I believe that the plaintiff is confusing remedies and affirmative defenses. What was – I mean, the district court found that your client violated the act by terminating this man when he came back from his military reserve duties, right? Actually, what it found was that it violated Section 4312 by not reinstating him to employment because it found that when he showed up for work after his return from three weeks of reserve duty, he was terminated a minute before he – or five minutes or whatever it was before he clocked in. Had he clocked in, there would have been no violation of Section 4312. But instead, they handed him a termination notice. And this was based on what had happened before he went on duty? This was based on a decision that was actually made the day before he went on duty, based on his performance in the several months that he had been – So your client, the employer, had decided finally and without subject to review that it was going to terminate this man the moment he came back from his reserve duty. Is that correct? Absolutely. That is correct. Was this conveyed to him? It was not conveyed to him. And this was all placed before the jury, of course. And there is no attack on the substantiality of the evidence to support the verdict. Was he warned at all before he left for his duties that his performance had been substandard? Oh, yes. He had received several warnings. He had received a – What did those consist of? They told him that you're not efficient enough, you're not reporting on time or what? All of those, Your Honor, plus he had gotten an extensive written employment evaluation, performance evaluation in which he had been found deficient in a number of respects, which was given to him, was gone over. And the company did not notify him of termination before he went on his three-week leave for two reasons. And this was before the jury, of course, for two reasons, really three reasons. One, they did not want to be in a position of looking like we're not going to honor the law and accord one of our employees his rights to serve in the military. Number two, they were well – Yes, but on that point, they had a strange way of doing that. Well, I believe that if they had – We're not going to tell him before he leaves, but when he comes back, the moment he comes back, before he even clocks in, we're going to tell him he's fired. Well, I believe they would have been extremely vulnerable to a Section 4311 discrimination charge had they done that. But that really was not even the primary motivating factor. The other – Was that done on advice of counsel? Pardon me? Was that done on advice of counsel? I'm not aware whether it was or not, Your Honor. The second thing was they were well aware that he was going overseas, that he had a sick wife. They believed that he was receiving company-paid health insurance. If they had terminated him before he left, his company health insurance would have ended on the date of termination. By not doing it, they extended his company health insurance until the end of the following month. Even though he did not work that following month, he was employed throughout his military service. And thirdly, they knew he had a very ill, bedridden wife and simply thought, rightly or wrongly, that to tell the man the day before he was going overseas to Italy, by the way, you're terminated, and then he's half a world away with an inability to be doing anything about it, plus not receiving his differential between his military pay and his regular pay, they decided to wait until he came back. Now, I suppose reasonable people can differ as to whether that's the best or better judgment to make, but that's really not an issue here. Did his health insurance terminate when he was fired? His termination date was actually August 20. Is the answer to my question yes or no? It expired at the end of August. Otherwise it would have expired. Was his wife still suffering from the malady that had been present when he went on duty? Was she at that time? Yes, sir. Yes, she was. The defenses, what's been characterized as defenses of 4311 imported into this case is not quite right. They were not defenses because, as you correctly point out, it had already been determined that 4312 was violated. The question was, what damages did he suffer? Here's where, at least to me, this case focuses, okay? The district court determined that your client violated the act by terminating him the minute he returned from reserve duty. And what your opponent is arguing is that the plain meaning of that is that the trial before the jury should have been a damages-only trial. Now, the damages may have been $1. They may have been $10. They may have been more than that. But that's all it should have been. And by giving your client the opportunity to say, we had a perfect right to terminate him the moment he came back because of what had happened before, that vitiates the requirement that an employer is under under this act to reinstate a returning reservist. Now, what's your response to that? That we did not argue and the case was not tried on we had a right to, we could have. It was a matter of we would have, we did. No different from the Gibson v. Mohawk case or even this court's decision in O'Day v. McDonald. The jury instruction told the jury that if they found your client had reason and cause, nondiscriminatory, to terminate, that they should return a jury verdict for your client, which is exactly what they did. Now, how does that not. Let me finish. I'm sorry. How does that not vitiate the rights that this man has under the act? The instruction was that if Air Products would have terminated him for a nondiscriminatory, for a lawful nondiscriminatory reason, then he's entitled to damages from the time that he would have been reinstated until that time that he would have been lawfully terminated. This was a rather unusual factual case in that that time was virtually contemporaneous with the failure to reinstate. It's contemporaneous only because your client chose to notify him when he returned and not when they had made the decision. Is that right? That's correct. That is correct. And in fact, the district court placed the burden on Air Products to prove by preponderance of the evidence that it would have terminated him. And let me back up for a second. Section 4316 of 38 U.S.C., which is part of USERRA, provides that a returning serviceman or woman who serves for more than 31 days may not be For less than 31 days, as in this case, there is no such requirement. So if five minutes later Mr. Jordan had clocked in and then Air Products had said, Mr. Jordan, you're terminated based on your performance prior to your departure, then there would be no case, just as in your hypothetical that you posed. The only reason that didn't happen is because they didn't wait until he clocked in. They called him into the office immediately when he got back. If you look at any of the employment discrimination cases, as I know Your Honors have, that we have cited, starting with the Gibson v. Mohawk case, in every one of those cases, there is illegal conduct, which has deprived someone of his or her employment. And then the question became, what are the damages? The damages in these particular cases were limited by proof by the defendant that it would have terminated the injured plaintiff at a later point in time, but prior to verdict, for a lawful, non-discriminatory reason, and that limited the damages to which that person was entitled. Mr. Wolfram, I think you're arguing that in this Instruction 17, as I'm reading it, it's at ER 99, there's a first paragraph as to Mr. Jordan's contentions. There's a second paragraph which seems to bring in the 4311 non-motivating factor. Do you want to get your... May I just... It's at ER 99. Actually, as given by the court, read by the court, it is at supplemental appendix at 246. I don't know if I brought that with me. I think it's probably the same. Yeah, it looks like it's the same. Because this is a 4312 case, it occurs to me that the second paragraph of Instruction 17 really should have been eliminated. And that might have then tied it in solely to 4312. But I suppose if he were terminated, if he'd been terminated, and a motivating factor was that he'd been gone for several times for this military service, this was not the first time, then you'd have to consider, I guess, whether he was wrongfully, whether the termination was wrongful. Even though they had all these other reasons to do it, if the military service was a motivating factor, maybe that would make it unlawful to do what they did. Your Honor is right in one sense, except that was taken into account in the Instruction. If this had been a 4311 case, then it would have been the burden in the first instance of the plaintiff, and in the last instance, to prove discrimination, to prove that the military service was a motivating factor, as you know from your Lysak decision. Here, the burden was placed in reverse on air products to show that the military service was a motivating factor. To prove that the military service was not a motivating factor. There was a presumption, a rebuttable presumption, if you will, that it was for purposes of the termination, the putative termination that occurred. I say putative only because theoretically there was no reinstatement, but in fact he was handed a termination notice. Therefore, the district court put the burden on air products to say, well, look, he's at will. They could have terminated him the minute after he came back. But there is some claim here, there has been, that it was because of military service. So in order to sweep that out of the way and basically leave us with an at will situation, it's going to be air products' burden to show that that was not a motivating factor. Or if it was a motivating factor, that he would have been, indeed was, terminated irrespective of his military service. I think I understand that now. I wanted to move on to the state law claim. What happened here, as I understand it, is once the district court amended its pretrial order, the state claim for intentional infliction of emotional distress simply kind of disappeared from the case. It did. And this all happened before the case was tried, I guess. That's correct. So why shouldn't we remand this for a trial on that state discrimination claim? Because it was never tried. Did you mean state intentional infliction? Two reasons. One is that the intentional infliction was premised on termination, the wrongful act. Termination was no longer an issue. Why couldn't it have been premised on your client's course of behavior? Well, the only course of behavior was failure to reinstate. I meant the history. From the time he worked there before he left, the decision to terminate him, not told to him before he left, and what followed. Well, first of all, the only premise for that. First of all, the cause of action requires outrageous conduct. Now, the only possible conduct that could have been an issue is, one, not telling him before he left, and two, failure to reinstate. I think what Judge Thompson is aiming at and what I'd like to know about, too, is just basically a legal question. Are the state claims alive? No. Why? One, it was premised on termination, which didn't take place. Two, if somehow the failure to reinstate could be considered outrageous conduct. I guess what we're really asking is this, and maybe you can tell us in points. Can you point in the record where District Judge Pragerson said the state claims are gone? He did not say it explicitly. It was implicit in his last written decision on the jury instructions, which in effect became the final pretrial order. So as we sit here, we don't know, this Court of Appeals doesn't know whether those claims are alive, dead, or what. Is that right? The Court made clear through the course of the trial that they were dead, that they were not an issue. Can you point in the record, I'm going to ask you the question again, where District Judge Pragerson said these claims are gone? They're dismissed. Is there an order saying that? There is not an order. There were evidentiary rulings during the course of the trial in which he said that I cannot give you the page citation of the transcript. I'd be happy to do so by a supplemental letter if the Court wishes. That might be helpful if you would do that. Okay. Thank you for your argument. Thank you, Your Honor. Rebuttal? Your Honor, much has been said about 4311 and the timing of the termination of Mr. Jordan. But I want to focus this Court's attention to what was tried before the jury. What was tried before the jury is whether or not Mr. Jordan is entitled to damages. Is entitled to what? Whether or not he's entitled to damages. The case that was tried was not a 4311 case. And as I pointed out in my brief, it's like comparing apples and oranges. 4311 has a different affirmative defense. It has a different burden of proof. What Mr. Wolfram is saying is that not only was the defendant put on the burden of saying, look, we had a lot of reason to terminate this guy and we terminated for reasons, and it also had the burden of showing that he wasn't terminated or that the military service was not a motivating factor in the termination. So that he was put on that burden, I guess, anyway, or it was an additional burden, which maybe he didn't have under the 4312 case. That is true, Your Honor. But that particular burden that was levied on Mr. Wolfram is a misstatement of the law. The legislature clearly stated that the measure of damages for 4312, or not the legislature, the case laws that have interpreted the veterans' rights, starting from 1940 all the way to present day, has all stated that in a reinstatement case, the measure of damages is the amount of money the plaintiff would have earned from the date he requested reinstatement up to the date that he was reinstated or up to the date that the case, the trial, ended. Because of that, as far back as 1949, cases like Boston v. M.R.R. Bentubo, 160F2B-36, and this is a 1947 case, to avoid the issue of the damages running for a long period of time, what did they do? They had to reinstate the returning service person in order to cut off damages. The moment Mr. Geron came back and reported for what, he was entitled to an unqualified reinstatement. There is no ifs, ands, or buts about it. I wonder if you could point in the excerpt of the record where you explicitly... Did I say that, Your Honor? Could you look at the excerpt of the record and say where you explicitly objected to the jury objection, the jury instruction that you objected to? That would be on page 88, I believe. Could you read it? Yes. Just give me a second. OK. Can you read what you said? Yes, starting from line 8. Basically, the plaintiff is of the opinion that jury instruction number 17, which imports the motivating factor analysis in 38 U.S.C. section 43-11, is not apt for this case. This case is a case of failure to reinstate the returning service person and a false conduct 38 U.S.C. section 43-12. The only affirmative defenses to a 43-12 claim are unreasonableness and undue hardship. The defense in this case did not even plead those affirmative defenses in the answer to the complaint. And even if they did plead that, they could not have met the burden of that particular affirmative defense based on case law. Therefore, importing wholesale the defenses of 43-11 into this case deprives Mr. Jordan of his right to be remedied for the wrong that was done by air product. OK, I'm going to get there. Now, did you ask for instruction on the state claims? Because the judge refused, when he modified the pretrial conference order and eliminated all those claims, it was moot. So the state claims went with the modification of the pretrial order? Yeah, because he said that the only thing that is going to be tried is the issue of damages. And you didn't object to that? Your Honor, I objected to all of that. You did? I objected to all of that. We had a lot of in-chamber conferences on this particular issue. Is that on the record? The objection to the state law claims itself? Did you make an objection on the record to the elimination of the state law claims? I cannot. You can't find it? I cannot in all honesty declare that I made it on the record. Is there a difference between what was tried to the jury and what claims were dismissed, gone forever? Yes, Your Honor. There's a difference. For instance. In other words, is this a case where the district court said, in effect, we are not going to try the state law claims in front of this federal jury? Or is it that the district judge said, these claims are gone, they're dismissed, they may never be pursued again? What the court said, if I remember correctly, is that since there was no termination, which was the whole issue, since Mr. Jordan was not terminated, he's not going to allow 4311 to be tried to the jury. And 4311 is the definitive defense that he now brought in to limit the damages. And he said, in order to simplify all of this, Mr. Jordan is going to be getting his damages anyway. Let's do away with every other thing. So he made a sweeping modification of the pretrial order that took away the issue of the other causes of action. And focused the attention of the lawyers on 4312. And going back to the issue of 4312, there's a very important something that I want to bring to the attention of the court. The law clearly stated that USERRA is designed to clarify, simplify, and strengthen the rights of returning services people. And this is contained in the House Report 10365, U.S. Code, United States Congressional Notes, 2949, 2451 page. If we look at what has happened in this case, Mr. Jordan's right that was secured to him by this year, 4312, was rendered useless. The legislature, in enacting the law, the USERRA, said that all the case laws that preceded USERRA still have a continuing vitality. And those case laws, starting from 1946 up to the present day, have consistently interpreted reinstatement damages to be limited only by failure to mitigate. Air products could not even meet that burden in this particular instance. They could not even meet the burden that he failed to mitigate. What they did was they did a turnaround. They brought something that has no bearing with what was being tried for the 311 to fix that which ain't broken. We thank you for your argument. Thank both counsel for their argument. The case just argued will be submitted for decision. And we'll proceed to the next argued case on the calendar, which is the United States v. Sumner. Counsel are present if they'd come forward, please. Thank you.
judges: Noonan, Thompson, Hawkins